AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: __EMJ 2/21/2024__

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

In the Matter of the Search of )
)
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No. MJ-24-165-SM
)
INFORMATION ASSOCIATED WITH SNAPCHAT ACCOUNTS )
"nickdrrick," "patrick_funn," "semmieasbas," (formerly, "semmieas") )
and "kaylak2022204" THAT IS STORED AT PREMISES )
CONTROLLED BY SNAP, INC. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A," which is attached and incorporated by reference herein.

located in the _____Central_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B," which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 2422(b) | Coercion and Enticement of a Minor |

The application is based on these facts:

See attached Affidavit of FBI Special Agent Shana Terry, which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Shana Terry, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Feb 21, 2024

*Judge's signature*

City and state:  Oklahoma City, Oklahoma          SUZANNE MITCHELL, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Shana M. Terry, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this Affidavit in support of an application for a search warrant for information associated with Snapchat accounts "nickdrrick" (hereinafter, **"TARGET ACCOUNT 1"**), "patrick_funn" (hereinafter, **"TARGET ACCOUNT 2"**), "semmieasbas," formerly "semmieas" (hereinafter, **"TARGET ACCOUNT 3"**), and "kaylak2022204" (hereinafter, **"TARGET ACCOUNT 4"**), or collectively "the **TARGET ACCOUNTS**," that are stored at a premises owned, maintained, controlled, or operated by Snap, Inc., an electronic communications service and/or remote computing service provider headquartered at 2772 Donald Douglas Loop North, Santa Monica, California 90405. The accounts to be searched are described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Snap, Inc. to disclose to the government information (including the content of communications) in its possession, pertaining to the subscriber or customer associated with the **TARGET ACCOUNTS**, as further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been since February 2019. During that time, I have investigated violations of federal law, to include federal violations concerning child pornography and the sexual exploitation of children. I have gained experience through training, classes, and work related to conducting these types of investigations. Further, as a federal law enforcement officer, I am authorized to

investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3.      I am familiar with the facts and circumstances of this investigation. The facts set forth in this Affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information, including information available on the Internet. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

4.      Based on my training, research, experience, and the facts as set forth in this Affidavit, there is probable cause to believe the **TARGET ACCOUNTS** contain evidence and/or contraband of violations of Title 18, United States Code, Section 2422(b).

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

6.      When the government obtains records pursuant to § 2703, or pursuant to a search warrant, the government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(2), and (3). Additionally, the government may obtain an order precluding Snap, Inc. from notifying the subscriber or any other person of the warrant, for

2

such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize the investigation. 18 U.S.C. § 2705(b).

## SNAPCHAT BACKGROUND

7.      Snapchat is a free mobile application made by Snap, Inc. and is available for download through the Apple App Store and Google Play Store. The Snapchat application is used to share information via the Internet through photos, videos, and chat messages, as well as to enable voice and video calls.

8.      To use Snapchat, a user must download the mobile application to their mobile device and sign up by providing a name and date of birth. The user then selects a username and password. Snapchat then requires an e-mail address or phone number to create an account. A user can also create a display name.

9.      A Snapchat username is a unique identifier associated with a specific Snapchat account, and it can only be changed once a year. A display name is how a user appears on Snapchat and can be changed at any time.

10.     "Snaps" are photos or videos taken using the camera on an individual's mobile device through the Snapchat application, and they may be shared directly with the user's friends, in a Story (explained further below), or in a Chat.

11.     A "Snapstreak" means that a Snapchat user and a friend have Snapped each other within a 24-hour window for more than three consecutive days. To keep a Snapstreak going, both Snapchat users must send a Snap back and forth to each other within a 24-hour window.

12.     A Snapchat user can add Snaps to their "Story." A Story is a collection of Snaps displayed in chronological order. Users can manage their privacy settings so that their Story can be viewed by all users, their friends, or a custom audience. A user can also submit their Snaps to

3

Snapchat's crowd-sourced service "Our Story," which enables their Snaps to be viewed by all users in Search and Snap Map.

13.    "Snap Map" allows a Snapchat user to see where their friends have been and what is going on around them.  A user will not appear on Snap Map until they open it for the first time and choose to share their location.  A user can update the people who have access to their location, to include going into "Ghost Mode" to hide their location from everyone.  Snaps that have been submitted to Snap Map can show up on the Map.  However, most of the Snaps on the Map are selected through an automated process.  Snap Map submissions may be stored indefinitely and may be visible on Snapchat for a long period of time.

14.    "Memories" is Snapchat's cloud-storage service.  Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories.  Content saved in Memories is backed up by Snapchat and may remain in Memories until deleted by the user.  Users may encrypt their content in Memories, in which case the content is not accessible to Snap, Inc. and cannot be decrypted by Snap, Inc.

15.    A user can type messages, send Snaps, audio notes, and video notes to friends within the Snapchat application using the "Chat" feature.  Snapchat's servers are designed to automatically delete one-on-one chats once the recipient has opened the message and both the sender and recipient have left the chat screen, depending on the user's "Chat" settings.

16.    An "emoji" is a small digital image or icon used to express an idea or emotion.  Snapchat automatically assigns "Friend Emojis" to a user's friends on Snapchat based on the way a user and their friends use Snapchat.

17.    A "bitmoji" is a small digital cartoon image that a Snapchat user can personalize to look like or represent themself.  A Snapchat user can link a previously created bitmoji to their

4

Snapchat account or create a new bitmoji through the Snapchat application. A Snapchat user's bitmoji accompanies their name in multiple facets of the application, including Chats and Snap Map.

18.    If a Snapchat user has device-level location services turned on and has opted into location services on the Snapchat application, Snap, Inc. will collect location data, which will vary depending on the purpose of the collection. Users have some control over the deletion of their location data in the application settings.

19.    Basic subscriber information is collected when a user creates a new Snapchat account, alters information at a later date, or otherwise interacts with the Snapchat application. The basic subscriber information entered by a user in creating an account is maintained as long as the user has not edited the information or removed the information from the account.

20.    In addition to the information provided by a user to register an account, Snap, Inc. may retain the account creation date and Internet Protocol ("IP") address. Snap, Inc. also stores the timestamp and IP address of an account user's logins and logouts.

21.    For each Snapchat user, Snap, Inc. collects and retains the content and other records described above.

22.    Snap, Inc. retains logs for the last 31 days of Snaps sent and received, for 24 hours of posted Stories, and for any unopened Chats or those saved by the sender or recipient. The logs contain meta-data about the Snaps, Stories, and Chats, but not the content. Snap, Inc. may be able to retrieve content of some Snaps.

23.    Videos and photos sent and received as Snaps are accessible to users for only a short period of time. If a screenshot is taken of an image by the recipient, the sender is notified. Videos cannot be saved by the recipient. Because of the common belief by Snapchat users that

videos and photos cannot be retained by recipients, Snapchat is often used to facilitate and document criminal acts.

24.     As explained herein, information stored in connection with a Snapchat account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element, or, alternatively, to exclude the innocent from further suspicion.

25.     The stored communications and files connected to the **TARGET ACCOUNTS** may provide direct evidence of the offenses under investigation.

26.     In addition, the user's account activity logs, stored electronic communications, and other data retained by Snap, Inc. can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, e-mail and chat logs, documents, and photos and videos (and the data associated with the foregoing, such as location, date, and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. This geographic and timeline information may tend to either inculpate or exculpate the account owner by allowing investigators to understand the geographic and chronological context of Snapchat access, use, and events relating to the crimes under investigation.

27.     Account activity may also provide relevant insight into the account user's state of mind as it relates to the offense under investigation. For example, information on the account may indicate the user's motive and intent to commit a crime (e.g., information indicating a plan

to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

28.     Other information connected to the use of Snapchat may lead to the discovery of additional evidence and possible victims, as well as the identification of co-conspirators, witnesses, and instrumentalities of the crime under investigation.

29.     Therefore, Snap, Inc.'s servers are likely to contain the material described above, including stored electronic communications and information concerning subscribers and their use of Snapchat to facilitate and communicate about the crimes under investigation.

30.     The FBI has previously requested that Snap, Inc. preserve all records pertaining to the **TARGET ACCOUNTS** on the following dates: Preservation of **TARGET ACCOUNT 1** confirmed by Snap Inc. on January 12, 2024; Preservation of **TARGET ACCOUNT 2** confirmed by Snap Inc. on January 17, 2024; Preservation of **TARGET ACCOUNT 3** confirmed by Snap Inc. on February 6, 2024; and Preservation of **TARGET ACCOUNT 4** confirmed by Snap, Inc. on February 7, 2024.

## PROBABLE CAUSE

31.     On October 25, 2023, R.W., a fourteen-year-old female, was forensically interviewed at the FBI's Lawton Resident Agency after being identified as a potential victim of sexual exploitation by an FBI subject living outside the United States.  During the interview, R.W. revealed that, in addition to the overseas subject, she had also been contacted by a Snapchat user approximately two years ago, utilizing the Snapchat account "k_anderson21278," with display name Katie Anderson ("Anderson").  R.W. provided information about her interactions with Anderson during the forensic interview, and, due to the poor audio quality of

the recording, she also provided clarifying information during a second forensic interview on November 21, 2023.

32.    R.W. was contacted by Anderson through Snapchat. Through their initial communications, she told Anderson she was twelve years old. Anderson told R.W. his name on Snapchat was fake but would not reveal his real name. Initially, the conversation between R.W. and Anderson was routine, but then Anderson began asking her to take nude photographs of herself and send them to him via Snapchat. Anderson then began pressuring R.W. to participate in explicit video calls with him via Snapchat. R.W. began crying during the interview when asked to describe the video calls with Anderson. R.W. estimated Anderson pressured her to participate in a video call with him approximately once a week over the time period of approximately one year. Every video call would last approximately ten to fifteen minutes and included Anderson making R.W. remove her clothes from the waist up. On one occasion, he made her show her genitals as well and instructed her to touch herself. Sometimes, R.W. cried during the calls because she did not like doing them, and Anderson would tell her, "Don't cry" and acted like he cared.

33.    Anderson never showed his face on the video calls and refused to provide R.W. with any real information about himself. Anderson would say only that he lived in Oklahoma City, despite R.W.'s attempts to attain his address. R.W. believed Anderson lived with roommates because he sometimes ended calls with her by saying his roommates were home.

34.    R.W. recalled a time when she argued with Anderson because she did not want to do a video call with him. Anderson sent her a video he had recorded of her and threatened to come to her house and show it to her parents if she did not do a video call with him. The

8

recording showed a previous video call between R.W. and Anderson, which Anderson had recorded with a different phone. In the call, R.W. was nude above the waist.

35.    Out of fear, R.W. continued participating in video calls with Anderson. Any time she tried to refuse, Anderson would use the threat of showing the explicit video to her parents. On one occasion, Anderson even sent her a picture of himself driving and stated, "I'm coming."

36.    In the summer of 2023, Anderson wanted to meet R.W. in person and threatened to show her parents the video if she did not agree to it. Anderson told R.W. he wanted her to touch his penis with her hands. R.W. did not want Anderson to pull into the driveway of her home, so she told him to park down the street in front of the community office building. In the back seat of Anderson's car, Anderson began touching R.W.'s chest and kissing her. He took off her shirt, pants, underwear, and bra. He touched her vagina with his hand and then penetrated her vagina with his penis. Anderson also forced R.W. to perform oral sex on him. R.W. cried as these things were happening, but she did not think Anderson noticed. R.W. recalled that Anderson used a condom when he had sex with her.

37.    R.W. and Anderson met in person again two or three weeks later. They met at the same location, and Anderson did the same things to her. Although this time, Anderson brought energy drinks with him and made R.W. drink them. R.W. recalled they said "Monster" on them, and they tasted "gross." Anderson said they would give her energy.

38.    On one occasion, R.W. was arguing with Anderson about having a video call, and Anderson stated, "I have other girls." R.W. did not know anything about the other girls Anderson referenced.

39.    R.W.'s parents provided the FBI consent to search R.W.'s phone, an iPhone 14. Contents of the iPhone 14 were extracted and made available for review via Cellebrite, a cell

phone extraction program widely used by law enforcement to extract and organize the contents of seized cell phones. The phone extraction listed two Apple IDs associated with the phone..

40.     Although the iPhone 14 did not contain the contents of communications between R.W. and Anderson, it did acknowledge the existence of communication between them. The iPhone 14 documented a Chat between R.W.'s Snapchat account and Snapchat user "k_anderson21278," beginning on March 9, 2023 and ending on September 25, 2023. In addition, Katie Anderson is listed in the Contacts of the iPhone 14. InteractionC recorded 969 incoming interactions from the contact.[1]

41.     A screenshot was located on the iPhone 14 depicting the Snapchat Chat page. The screenshot is pictured on the following page:

---

[1] According to the glossary on Cellebrite's website, www.cellebrite.com, InteractionC is a database, common to Apple devices, that tracks interactions such as text messages of the user, with recent contacts.



42.    Snapchat user Katie Anderson is listed on the Chat page, with a smiling face emoji pinned to the bitmoji, which, according to Snapchat's support page, help.snapchat.com, indicates the user is one of your "Best Friends." Snapchat uses an algorithm to determine a user's "Best Friends," which takes into consideration the number of Snaps sent to each other, whether there is a "Snapstreak" going, as well as other factors. When a user is one of your "Best Friends," it indicates you send a lot of Snaps to the user, but they are not your "#1 Best Friend."

11

43.    According to Snapchat's support page, the empty blue arrow pictured next to Anderson's bitmoji indicates Anderson opened a Chat.

44.    On October 26, 2023, an Administrative Subpoena was served to Snap, Inc. requesting subscriber information for Snapchat user "k_anderson21278" for the time period of October 1, 2022 to October 26, 2023.    Returned records revealed that the account for "k_anderson21278" was created on December 21, 2021 and was last active on October 26, 2023. The IP address used to create Snapchat account "k_anderson21278" on December 21, 2021 was 70.174.239.59.

45.    IP address data from Snap Inc. revealed a second IP address as well.    It showed that the IP address 70.174.239.84 was the last recorded IP address used by Snapchat account "k_anderson21278" on October 26, 2023 and was connected to over 350 occurrences of account activity during the month of October 2023 and over 3,400 occurrences of account activity from October 20, 2022 to October 26, 2023.

46.    On November 8, 2023, a federal Search and Seizure Warrant was served to Snap Inc. for information related to Snapchat account "k_anderson21278."    A review of the provided records showed there were no saved communications between Anderson's account and R.W.'s account.    However, numerous Chat messages were provided between Anderson's account and an account later identified as belonging to a different individual, K.M.    The messages involve similarly sexual conversations and span the short time period between December 8, 2022 and December 14, 2022.    In the messages, Anderson asks K.M to show him her "ass" and "titties." When K.M. says she is not in a private location, Anderson asks if she has any saved photographs of her or her friends.    From context, it appears that some of the messages are sent during the course of video calls between Anderson and K.M.    Anderson instructs K.M. what he wants to see

her do during the calls, such as "Lemme see the ass," and "Move back babe, Can't see the full tits." Anderson also attempts to get K.M. to meet him in person to have sex. However, there is nothing in the chat to suggest they did meet in person.

47.    Utilizing subscriber information related to K.M.'s Snapchat account, K.M. was identified and a forensic interview was conducted with her on January 11, 2024. During the interview, K.M. recalled a man initiating contact with her via the Snapchat application. A series of Chat messages (previously referred to in paragraph 46) was shown to K.M. during the interview, and she confirmed it was her account listed in the communications and that she had been participating in the conversations. K.M. was thirteen years old at the time of the messages. K.M. explained that the conversation with "k_anderson21278" began in a routine way, but then he started asking her to send him sexually explicit photographs and videos of herself. K.M. could vividly recall that, when she refused to send him what he wanted, he told her that if she did not send what he was asking for, he would "shoot up" her family. Anderson deleted the threatening message shortly after sending it. K.M. believed Anderson would follow through with his threat, and out of fear, she continued to send him the photographs and videos he wanted, to include sexually explicit images of her breasts and genitals. Anderson instructed K.M. to play with herself in the videos and made her call him "daddy."

48.    K.M. recalled that, periodically, Anderson initiated video calls with her. If she did not answer the call, he would continue to call her over and over. K.M. recalled a particular video call where Anderson was in the shower. In the video call, the man was playing with his penis with his hand. K.M. recalled the man making a "come here" gesture with his hand, indicating he wanted K.M. to join him. Eventually, K.M. stated that something white came out of the man's penis and went down the shower drain.

49.     K.M. believes Anderson used other Snapchat accounts to contact K.M.  For example, K.M. recalled having similar communication with a man whose name started with "R." "R" made K.M. send the same type of photographs and videos of her breasts and genitals as the first man.

50.     K.M. believes that the users of one or both of the Snapchat accounts were saving her pictures and videos.  She recalled the user of one of the accounts threatening to show up at her house and show her father one of her sexually explicit photographs.

51.     Multiple media files were also provided by Snap Inc. pursuant to the Search Warrant.  A review of the media files revealed that twelve media files were transferred between Anderson's account and Snapchat account "ryan_121312" on December 12, 2022 and December 13, 2022.  Eleven of those files are photographs taken of a mobile phone screen showing the breasts of a female wearing a bra.  The female's face is not shown.  The remaining media file is a photograph showing a male holding his erect penis in his hand.  The male's face is not shown.

52.     An Administrative Subpoena was served to Snap Inc. for subscriber information associated with Snapchat account "ryan_121312" for the time period of December 12, 2022 and December 13, 2022.  Returned records revealed that the account was created on June 23, 2022, using the same IP address used to create account "k_anderson21278."  In addition, IP address data revealed Snapchat activity was conducted with the account on two occasions utilizing IP address 70.174.239.84, which is the same IP address connected to activity on the "k_anderson21278" Snapchat account.

53.     Shortly after receiving subscriber information related to Snapchat account "ryan_121312," Snap Inc. provided additional information to FBI Liaisons at NCMEC regarding media files which were saved, and/or shared, and/or uploaded to the account and contained child

sexual abuse material.    On the dates of November 4, 2023 and November 11, 2023,
"ryan_121312" saved, and/or shared, and/or uploaded seven media files fitting the
characterization of a "Sex Act" involving a "Pubescent Minor" and 22 media files fitting the
characterization of "Lascivious Exhibition of a Pubescent Minor."

54.    A review of the media files revealed they consisted of 25 images and five videos.
All media files appeared to be photographs or videos of a separate mobile phone communicating
within the Snapchat application.    Most images and videos depict a female rubbing and
manipulating her bare breast(s) with her hand. The female's face is not shown.

55.    A Federal Search Warrant was served to Snap, Inc. for records related to Snapchat
account "ryan_121312." The most recent IP address used to log into the account was listed as
70.174.239.84 on December 4, 2023.  On January 11, 2024, Snap Inc. provided additional
records related to Snapchat account "ryan_121312" pursuant to a Federal Search and Seizure
Warrant. The records consisted of approximately 5,077 digital files.

56.    Within the media files, there were conversations between the Snapchat account
"ryan_121312" and K.M., as she had suggested during her interview.  The subject of the
conversations was also consistent with K.M.'s statements that he requested images and videos of
a sexual nature.  Overall, the dates of these conversations spanned from December 2022 through
February 2023.

57.    Also within the media files, there are many images and videos of females
appearing to be minors, which fit the characterization of Child Sexual Abuse Material
("CSAM"). CSAM from approximately forty different girls was saved on the account, including
images and videos of the girls' breasts and genitals. Some of the CSAM is documented as being
received by "ryan_121312" directly from the girls' Snapchat accounts.  Much of the CSAM is

documented as being shared to or from **TARGET ACCOUNT 1, TARGET ACCOUNT 2,** and **TARGET ACCOUNT 3.**

58.    Administrative Subpoenas sent to Snap Inc. for subscriber information related to **TARGET ACCOUNT 1, TARGET ACCOUNT 2,** and **TARGET ACCOUNT 3** revealed the following information:

> **TARGET ACCOUNT 1:**
>
>> Display Name: Nick J
>>
>> Account Creation Date: October 25, 2022
>>
>> Creation IP Address: 70.174.239.84
>
> **TARGET ACCOUNT 2:**
>
>> Display Name: Patrick N
>>
>> Account Creation Date: September 12, 2023
>>
>> Creation IP Address: 70.174.239.84
>
> **TARGET ACCOUNT 3:**
>
>> Display Name: Mexyboy As
>>
>> Account Creation Date: January 26, 2023
>>
>> Creation IP Address: 70.174.239.84

59.    The creation IP Address on all three accounts is 70.174.239.84—the same IP address by which "k_anderson21278" conducted the majority of account activity.

60.    In addition to the CSAM shared between the accounts, it appears the user also shared notes regarding the girls with whom he communicated between all five accounts. For example, on February 28, 2023, "ryan_121312" sent **TARGET ACCOUNT 1** what appears to be the first name of a girl followed by the name of a school. On May 22, 2023,

"k_anderson21278" sent "ryan_121312" what appears to be a telephone number resolving to the Oklahoma City area. On September 19, 2023, **TARGET ACCOUNT 2** sent "ryan_121312" what appears to be a Snapchat username followed by the name of a high school. **TARGET ACCOUNT 3** and "ryan_121312" also shared media files, as well as what appears to be Snapchat usernames, between February 28, 2023 and November 24, 2023.

61.    After receiving records from Snap Inc. pursuant to the Search Warrant for information related to Snapchat account "ryan_121312", a process was initiated to identify potential minor victims related to the account. During that identification process, an Administrative Subpoena was submitted to Snap Inc., requesting subscriber information related to **TARGET ACCOUNT 4**, which was initially thought to be a victim account based on the fact that CSAM images had been shared from **TARGET ACCOUNT 4** to "ryan_121312." The following subscriber information was provided:

   **TARGET ACCOUNT 4:**

        Display Name: Kayla K

        Creation Date: April 26, 2022

        Creation IP Address: 70.174.239.59

62.    The creation IP Address for **TARGET ACCOUNT 4** is the same as the creation IP Address used to create "k_anderson21278" and "ryan_121312." Additionally, IP address data revealed that much of the account activity for **TARGET ACCOUNT 4** was conducted via IP address 70.174.239.84, which is the same IP address used to conduct much of the account activity by "ryan_121312."

63.    Based on the common creation IP addresses and the fact that the same IP address was then used to conduct much of the activity on and shared among Snapchat accounts

17

"k_anderson21278," "ryan_121312," and the **TARGET ACCOUNTS**, I believe the same user utilizes all six accounts and has done so in furtherance of criminal activity, in violation of 18 U.S.C. § 2422(b).

64.    Additionally, the suspected user of Snapchat accounts "k_anderson21278," "ryan_121312," and the **TARGET ACCOUNTS**, who was identified based upon further investigation, was arrested on February 2, 2024. Therefore, the information sought by this warrant for the **TARGET ACCOUNTS** is requested from the creation dates of the **TARGET ACCOUNTS**, listed above and in Attachment A, through the date of the suspected user's arrest.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

65.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Snap, Inc. Because the warrant will be served on Snap, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

66.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Snap, Inc. to disclose to the government digital copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

67.    In conducting this review, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime under investigation, including but not limited

to, undertaking a cursory inspection of all information within the account described in Attachment A. This method is analogous to cursorily inspecting all the files in an office filing cabinet to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with Snapchat Chats, including pictures and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account, as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but do not contain any searched keywords.

### AUTHORIZATION REQUEST

68.     I understand that no warrant shall issue, but upon probable cause and particularly describing the place to be searched and the things to be seized. Based on the information above, I submit that there is probable cause to believe there is evidence of violations of Title 18, United States Code, Section 2422(b) associated with the Snapchat account described in Attachment A. Specifically, there is probable cause to believe there are statements made by the user of the **TARGET ACCOUNTS** and pictures and/or videos sent to or from the **TARGET ACCOUNTS** that corroborate R.W.'s and K.M.'s accounts of abuse and that may identify additional victims. A timeframe covering the entire existence of each account will further my investigation into the victimization of not only the known victims but also of potential additional victims.

19

69.     I request to be allowed to share this Affidavit and the information obtained from this search (to include copies of digital media) with any government agency, to include state, local, and tribal agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

Shana M. Terry
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on February __21__, 2024.

SUZANNE MITCHELL
United States Magistrate Judge
Western District of Oklahoma

20

## ATTACHMENT A

### Property to be Searched

This warrant applies to information associated with the following Snapchat accounts, which are stored at the premises owned, maintained, controlled, and/or operated by Snap, Inc., a company headquartered in Santa Monica, California:

1. Snapchat username "**nickdrrick**" for the timeframe of **October 25, 2022 to February 2, 2024**;

2. Snapchat username "**patrick_funn**" for the timeframe of **September 12, 2023 to February 2, 2024**;

3. Snapchat username "**semmieasbas**" (and "**semmieas**") for the timeframe of **January 26, 2023 to February 2, 2024**; and

4. Snapchat username "**kaylak2022204**" for the timeframe of **April 26, 2022 to February 2, 2024**.

## <u>ATTACHMENT B</u>

### Particular Things to be Seized

I.      **Information to be disclosed by Snap, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap, Inc., regardless of whether such information is located within or outside the United States, and including any messages, records, files, logs, photographs, videos, or other information that has been deleted but is still available to Snap, Inc., or has been confirmed preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snap, Inc. is required to disclose the following information to the government for the accounts and associated timeframes listed in Attachment A.

A.  All stored communications and other files in Snap, Inc.'s possession (including account access information, event histories including dates and times, connection dates, times, and locations, connection IP information, message content, graphics files, video files, attachments, etc., further detailed below), whether physical, stored on electronic media, or temporarily extant on any computer or server, reflecting communications to or from the Snapchat accounts identified in Attachment A;

B.  All subscriber information, including Snapchat usernames, vanity names, e-mail addresses, phone numbers, full names, physical addresses, and other personal identifiers;

C.  All information pertaining to the creation of the accounts, including dates and times of creation, IP addresses used to create the accounts, and all subscriber information provided at the time the accounts were created;

22

D. Timestamps and IP addresses of all account logins and logouts;

E. Logs of all messages and all files that have been created and Snaps sent or accessed via the Snapchat accounts identified in Attachment A, or that are controlled by user accounts associated with the Snapchat accounts;

F. The account names, display names, identifiers, and all available subscriber information for any other Snapchat account(s) associated with the Snapchat accounts listed in Attachment A;

G. All content, records, connection logs, and other information relating to communications sent from or received by the Snapchat accounts identified in Attachment A from the timeframes listed, including but not limited to:

    1. Transmitter/Sender identifiers (i.e., addresses and/or IP address);

    2. Connection dates and times;

    3. Method of Connection (telnet, ftp, http);

    4. Data transfer volume;

    5. Username associated with the connection, and other connection information, including the IP address of the source of the connection;

    6. All GPS location data and geographical data stored in relation to the accounts, including, but not limited to, location data derived from Snaps, Snap Map, Memories, Stories, logins, logouts, access records, and data pulled from the user's device.

    7. Account subscriber identification records;

    8. Other user accounts associated with, referenced in, or accessed by the Snapchat accounts identified in Attachment A;

23

9. Address books, contact lists, and "my friends";

10. Records of files or system attributes accessed, modified, or added by the user;

11. All records and other evidence relating to the subscriber(s), customer(s), account holder(s), or other entity(ies) associated with the Snapchat accounts identified in Attachment A, including, without limitation, subscriber names, user names, screen names or other identifiers, addresses, residential addresses, business addresses, and other contact information, telephone numbers or other subscriber number or identifier number, billing records, all information regarding the length of service and the types of services the subscriber or customer utilized, and any other identifying information, whether such records or other evidence are in electronic or other form. Such records and other evidence include, without limitation, correspondence and other records of contact by any person or entity about the above-referenced accounts, the content associated with or relating to postings, communications, and any other activities to or through the Snapchat accounts listed in Attachment A, whether such records or other evidence are in electronic or other form;

12. All records pertaining to communications between Snap, Inc. and the user(s) of the Snapchat accounts identified in Attachment A regarding the user or the user's Snapchat accounts, including contacts with support services and records of actions taken;

13. The content of all messages and Snaps sent, received, saved, stored, or otherwise preserved.

Snap, Inc. is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence, instrumentalities, and/or contraband of violations of Title 18, United States Code, Section 2422(b) involving the user of the Snapchat accounts listed in Attachment A and including information pertaining to the following matters:

a. Communication between the Snapchat accounts identified in Attachment A and R.W. and/or K.M.;

b. Communications between the Snapchat accounts identified in Attachment A and others during the timeframes listed in Attachment A.

c. Evidence indicating the times, geographic locations, and electronic devices from which the Snapchat accounts listed in Attachment A were accessed and used, to determine the chronological and geographical context of the Snapchat accounts' access, use, and events relating to the crimes under investigation and to the Snapchat account user;

d. Evidence indicating the user's state of mind as it relates to the crimes under investigation;

e. The identity of the person(s) who created or used the Snapchat accounts identified in Attachment A, including records that help reveal the whereabouts of such person(s);

As used above, the terms "documents," and "communications," refers to all content regardless of whether it is in the form of pictures, videos, audio records, text communications, or other medium, and whether in draft or complete form, and whether sent or received.

As used above, the terms "records" and "information" include all forms of data stored by Snap, Inc., including IP addresses, toll records, and account identifying information.

25

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, instrumentalities, and/or contraband described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.